DAMIEN M. SCHIFF*, Cal. Bar No. 235101
E-mail: dms@pacificlegal.org
JOSHUA P. THOMPSON, D.D.C. No. TX0084
E-mail: jpt@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

JONATHAN WOOD, D.C. Bar No. 1045015
E-mail: jw@pacificlegal.org
Pacific Legal Foundation
3033 Wilson Blvd., Suite 700
Arlington, Virginia 22201
Telephone: (202) 888-6881

*Pro Hac Vice Pending

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF COOS BAY, OREGON,<br>500 Central Avenue<br>Coos Bay, Oregon 97420 | ) | No. _____ |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILBUR J. ROSS, JR., in his official<br>capacity as Secretary of the United States<br>Department of Commerce<br>1401 Constitution Avenue N.W.<br>Washington, DC  20230 | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF<br>COMMERCE<br>1401 Constitution Avenue N.W.<br>Washington, DC  20230 | ) | |
| | ) | |
| | ) | |
| | ) | |

1

NATIONAL MARINE FISHERIES ⟩
SERVICE ⟩
1315 East-West Highway ⟩
Silver Spring, Maryland 20910 ⟩
⟩
               Defendants. ⟩
⟩

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1.  In the spring of 2016, Defendant National Marine Fisheries Service issued a biological opinion, under the apparent authority of the Endangered Species Act, 16 U.S.C. §§ 1531-1544, to govern the Federal Emergency Management Agency's implementation of the national flood insurance program for Oregon communities. *See* Endangered Species Act (ESA) Section 7(a)(2) Jeopardy and Destruction or Adverse Modification of Critical Habitat Biological Opinion and Section 7(a)(2) "Not Likely to Adversely Affect" Determination for the Implementation of the National Flood Insurance Program in the State of Oregon (Apr. 14, 2016) [hereinafter Or. NFIP BiOp].

2.  The opinion contends that FEMA's flood insurance program produces a slew of harmful impacts to various populations of fish and wildlife protected under the Endangered Species Act.  All of these impacts the opinion traces to the non-federal development that FEMA flood insurance is expected to cover.  To mitigate the environmental effects of this development, the opinion requires that FEMA condition flood insurance on local communities' adoption of onerous

land-use ordinances that will severely restrict productive activity in government-drawn floodplains.

3.   The biological opinion exceeds the Service's authority.  The Service may issue such an opinion only if the relevant federal action "may affect" protected species or their critical habitat.  *See* 50 C.F.R. § 402.14(a).  FEMA's flood insurance program, however, legally affects nothing in the physical environment.  Rather, it is the development that may be covered by FEMA's program which is responsible for any impacts.  Because FEMA has no legal authority to control that development, its effects cannot be attributed to the federal program.  *See Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 770 (2004) ("[W]here an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect.").  The necessary predicate for a biological opinion is absent.

4.   Although the Endangered Species Act is designed to prevent the extinction, and to promote the recovery, of endangered and threatened populations, *see* 16 U.S.C. § 1531(b), that is not its only goal.  Just as important, the statute aims "to avoid needless economic dislocation produced by agency officials zealously but unintelligently pursuing their environmental objectives." *Bennett v. Spear*, 520 U.S. 154, 176-77 (1997).  This case is about an agency's failure to heed this latter purpose.

## Jurisdiction and Venue

5.    Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (judicial review of agency action), 28 U.S.C. § 2201 (authorizing declaratory judgments), and *id*. § 2202 (authorizing relief in addition to declaratory judgments).

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1), because at least one Defendant resides in this District.  *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

## Parties

### *Plaintiff*

7.    Plaintiff City of Coos Bay, Oregon, is a city formed under the constitution and laws of the State of Oregon.  Since 1984, the City has participated in FEMA's national flood insurance program for Oregon.  To that end, the City has enacted and administers a Flood Damage Prevention Ordinance.  *See* Coos Bay Mun. Code ch. 17.347.   The City wishes to make flood insurance available to landowners within its jurisdiction, both to protect against damage or loss of property due to flooding, as well as to support development in the mapped floodplain areas—FEMA-designated "special flood hazard areas"—within the City's jurisdiction, including parcels owned by the City and its Urban Renewal Agency.

8.  The City objects to the biological opinion's stringent land-use restrictions, which are conditions on the City's continued eligibility for flood insurance and which conflict with the City's land-use policies. *See* FEMA, Program Level Biological Assessment for the National Floodplain Insurance Program, Oregon State 4-19 (Feb. 2013) ("To meet the standards under the Proposed Action, the City of Coos Bay will be required to institute multiple changes to their implementation of the [national flood insurance program] and related regulatory programs."). In the City's view, questions about whether and how development should proceed generally should be reserved for local decision, not federal control.

*Defendants*

9.  Defendant Wilbur Ross is the Secretary of the United States Department of Commerce. Congress has delegated to the Secretary the authority to administer the Endangered Species Act with respect to the species that fall within the jurisdiction of the Department of Commerce. *See* 16 U.S.C. §§ 1532(15), 1533(a)(2). Secretary Ross is sued in his official capacity only.

10. Defendant United States Department of Commerce is a department within the Executive Branch.

11. Defendant National Marine Fisheries Service is an agency within the Department of Commerce. The Secretary of Commerce has delegated to the Service the authority to administer the Endangered Species Act. *See* 50 C.F.R.

§ 402.01(b).  The Service is the agency responsible for the biological opinion that this action challenges.

## Legal Background

### *The National Flood Insurance Program*

12. The National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4131, authorizes FEMA to issue flood insurance to local communities.  FEMA provides such insurance once a community has adopted "comprehensive criteria for land management and use," *id*. § 4012(c)(2), as well as "adequate land use and control measures," *id*. § 4022(a).

13. To guide the local regulatory process, FEMA produces floodplain management criteria, which are intended to restrict development in flood-prone areas, as well as to direct new development away from and to improve the long-range management of such areas.  *See id*. § 4102(c).

14. FEMA also runs a Community Rating System, which offers lower insurance premiums to communities that have adopted criteria stronger than those that FEMA has promulgated.  *See id*. § 4022(b).

15. A third component of FEMA's flood insurance program is the agency's publication of Flood Insurance Rate Maps, which depict among other things special flood hazard areas.  *See id*. § 4101; 44 C.F.R. §§ 59.1, 65.1.

16. Communities that fail to adopt and manage their land-use plans and ordinances in a manner consistent with FEMA's criteria are ineligible for FEMA flood insurance. 42 U.S.C. § 4022(a)(1).  Moreover, federally regulated

Complaint for Decl. & Inj. Relief

and insured mortgage lenders are forbidden to offer loans for uninsured development occurring within special flood hazard areas. *Id.* § 4012a(b).

17. Nevertheless, no part of FEMA's program regulates floodplain development *independent of* a community's participation in the program. In other words, the only FEMA-imposed consequence of a community's decision to regulate its land-use in a manner contrary to FEMA's management criteria is ineligibility for FEMA flood insurance and related financial assistance programs.

*The Endangered Species Act*

18. The Endangered Species Act establishes a program for the conservation of flora and fauna faced with the threat of extinction. The Service by delegation administers the Act with respect to marine and anadromous populations of wildlife and plants.

19. The Act requires the Service to determine whether a "species" is in danger of extinction, or will be in danger of extinction in the foreseeable future. *See* 16 U.S.C. § 1533(a)(1). Once a species has been determined to be "endangered" or "threatened," *id.* § 1532(6), (20), *i.e.*, "listed," the Service designates the species' "critical habitat," *see id.* § 1533(a)(3). Such habitat comprises those occupied areas containing the physical or biological features essential to the species' conservation, or any unoccupied area that itself is essential to the species' conservation, *see id.* § 1532(5).

20. The unauthorized "take" of any listed species subjects a "person" (which includes any federal, state, or local government entity, or legal or natural

person, *see id*. § 1532(13)) to significant civil and potentially criminal liability. *See id*. § 1540(a), (b); 50 C.F.R. § 17.31(a). "Take" is defined broadly to include essentially any activity that produces measurable harm to a species. *See* 16 U.S.C. § 1532(19).

21. In addition to the foregoing generally applicable proscriptions, the Act prohibits federal agencies from undertaking any action that would be likely to jeopardize the continued existence of any listed species, or destroy or adversely modify its critical habitat. *Id*. § 1536(a)(2). To help prevent such jeopardy or adverse modification, the Act requires that federal agencies consult with the Service. *See id*. This consultation obligation arises whenever the proposed agency action "may affect" listed species or their critical habitat. *See* 50 C.F.R. § 402.14(a).

22. During consultation, if the Service determines that the proposed action is likely to adversely affect a listed species or its critical habitat, the Service must produce a "biological opinion." *See* 16 U.S.C. § 1536(b)(3); 50 C.F.R. § 402.14(b)(1), (g)(4). The biological opinion provides the Service's view as to how the proposed action will affect the species and its critical habitat. 16 U.S.C. § 1536(b)(3).

23. If the Service determines that the proposed action will produce jeopardy or adverse modification, the Service must formulate a "reasonable and prudent alternative" that will avoid those consequences. *See id*. The Service generally also will include with the alternative an "incidental take statement," which

8

immunizes the federal agency from any liability otherwise arising from the incidental take of a listed species during the course of the action's implementation. *See id.* § 1536(b)(4)(C), (*o*).

24. A federal agency is not required to follow a biological opinion, *see* 50 C.F.R. § 402.15, but the opinion exerts "a powerful coercive effect" nonetheless. *Bennett*, 520 U.S. at 169. That is because the agency, although "technically free to disregard the [b]iological [o]pinion and proceed with its proposed action," does so "at its own peril (and that of its employees)," given the Act's "substantial civil and criminal penalties, including imprisonment" for take that is not authorized by a take statement or permit. *See id.* at 170.

## Allegations of Fact

25. In 2009, a coalition of environmental groups sued FEMA for its failure to consult over the national flood insurance program's implementation in Oregon. The agency quickly settled, agreeing to request consultation from the Service on the program.

26. In 2011, FEMA formally requested consultation from the Service over the impact of the national flood insurance program's implementation in Oregon on protected species and their critical habitat. *See* Or. NFIP BiOp at 2.

27. In 2016, the Service produced a biological opinion. *See id.* at 4.

28. The biological opinion determines that the Oregon program—which the opinion defines as FEMA's land-use management criteria, community rating system, and floodplain mapping, *id.* at 11—would jeopardize a number of

aquatic species and destroy or adversely modify their critical habitat, *id*. at 272-74.

29. The Service produced the biological opinion based on the agency's determination that the effects of floodplain development that will be covered by the national flood insurance program in Oregon are properly attributed to the program itself. *See id*. at 163-66.

30. The biological opinion contains a reasonable and prudent alternative comprised of six elements. *See id*. at 274-97.

31. Element 2 conditions the availability of flood insurance on the local government's adoption of a number of draconian land-use restrictions. *See, e.g.*, *id*. at 279 (no net loss of floodplain functions); *id*. at 288 (no new development in special flood hazard areas and substantial set-backs); *id*. at 290 (so-called "cluster development" zoning restricting new development landward of the 50-year flood interval).

32. After the biological opinion's issuance, FEMA provided notice to local governments that participate in FEMA's Oregon flood insurance program—including the City—that FEMA intends to implement the reasonable and prudent alternative, to the extent that it has legal authority to do so.

33. The biological opinion requires that Element 2 be fully implemented by March, 2018. *Id.* at 277.

34. Recently, FEMA has stated that it is still attempting to determine whether there "may be certain sub-elements of the RPA that are, as written, outside its

legal authority to implement." Declaration of Michael Grimm ¶ 10, Doc. 18-1,
*Oregonians for Floodplain Protection v. U.S. Dep't of Commerce*, 1:17-cv-01179
(D.D.C. filed Sept. 8, 2017).  But the City is unaware of any FEMA statement
or decision rejecting the reasonable and prudent alternative in its entirety.

### Declaratory and Injunctive Relief Allegations

35.  The biological opinion is the subject of a live controversy.  The City contends
that the Service is without authority to issue the biological opinion, including
its reasonable and prudent alternative, because the national flood insurance
program does not as a matter of law affect any species listed under the
Endangered Species Act, or any critical habitat.  In contrast, the Service
contends that the flood insurance program does affect listed species and their
critical habitat.

36.  The dispute between the City and the Service requires no further factual
development, because the City contends that FEMA's implementation of the
flood insurance program cannot, as a matter of law, trigger the obligation to
consult with the Service, or the Service's obligation to produce a biological
opinion.  *See Ctr. for Biological Diversity v. U.S. Dep't of Housing & Urban
Dev.*, 541 F. Supp. 2d 1091, 1100-02 (D. Ariz. 2008) (holding that consultation
is not required for various federal "financial assistance programs" because they
"are too attenuated to affect the listed species"), *aff'd*, 359 F. Appx. 781, 783
(9th Cir. 2009) (holding that consultation is not required because the federal

agencies "do not approve or undertake any of the development projects at issue").

37. The City has been, is, and will continued to be injured by the biological opinion. The City wants to make flood insurance available to property owners within its jurisdiction, as well as to maximize their financing opportunities.  But the City strongly objects to the reasonable and prudent alternative in its entirety, especially its onerous land-use restrictions, the adoption of which is a condition to continued flood insurance eligibility and maximization of financing opportunities.  The biological opinion produces a powerful coercive effect on FEMA to comply with the reasonable and prudent alternative.  As a consequence of that coercive effect, it is extremely likely that FEMA will implement each element and "sub-element" of the RPA that it believes it has the legal authority to put into effect. But for the opinion, it is unlikely that FEMA would continue to implement the reasonable and prudent alternative. Instead, the agency likely would continue to administer the Oregon flood insurance program as it has done in the recent past, prior to the biological opinion's issuance.

38. Therefore, an actual and substantial controversy exists between the City and the Service over the legality of the latter's biological opinion.  A judicial determination of the parties' rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

39. Further, the City has no plain, speedy, and adequate remedy at law. Judicial review of the biological opinion can be had only through the Administrative Procedure Act, which does not allow for damages or other remedies at law. Without judicial relief, the City and its residents and property owners will suffer irreparable injury. The City either will have to comply with the reasonable and prudent alternative's burdensome land-use proscriptions, or lose eligibility for flood insurance.

**Claim for Relief**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706)**

40. All of the preceding paragraphs are incorporated fully herein.

41. A necessary predicate to the Service's authority to issue a biological opinion is a finding that the proposed agency action may affect listed species or their critical habitat. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a).

42. The biological opinion asserts that this predicate is satisfied by FEMA's proposed implementation of the flood insurance program in Oregon, because the program financially enables or otherwise encourages development that in turn may affect listed species or their critical habitat. *See* Or. NFIP BiOp at 163-66.

43. An agency action can have no legal effect on the physical environment if the agency has no legal authority to prevent the effect. *Dep't of Transp.*, 541 U.S. at 770. Put another way, if other entities retain the power, subsequent to the agency action, to allow or prevent an activity that produces environmental

effects, then the causal chain between the agency action and those effects is broken.  *See Sierra Club v. FERC*, 827 F.3d 36, 47-48 (D.C. Cir. 2016).

44.   FEMA has no authority to regulate, much less to prevent, development or other land-use activities within a floodplain.  *See* 42 U.S.C. § 4011(a) (authorizing FEMA only "to establish and carry out a national flood insurance program"); FEMA Biological Assessment at 4-1 ("FEMA does not make local land use decisions . . . .").  Necessarily, then, FEMA lacks authority to regulate so as to vindicate the environmental values of the Endangered Species Act.  *See* 42 U.S.C. § 4102(c)(1)-(4) (authorizing development of land-use criteria based on concerns pertaining to "flood damage," "flood hazards," and "flood-prone areas" without reference to the "environment" or related concerns).  *Cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-64 (2007) (rejecting an interpretation of the Endangered Species Act's consultation provisions that would impliedly augment agencies' underlying authorities with a species-protection power).

45.   In contrast, local governments like the City have near plenary authority to control floodplain development in Oregon, for environmental as well as other purposes.  *See, e.g.*, Or. Rev. Stat. § 197.175(2)(a), (b) (requiring each city and county to adopt comprehensive land-use plans and to enact regulations to implement them).  *See also* FEMA Biological Assessment at 4-19 to 4-23.

46.   Thus, FEMA's implementation of the flood insurance program in Oregon will not, as a matter of law, affect any listed species or its critical habitat.

14

47. For that reason, the necessary predicate for the issuance of a biological opinion is absent, and the Service's issuance of a biological opinion for FEMA's implementation of the national flood insurance program in Oregon is thus not in accordance with law and is in excess of statutory authority, 5 U.S.C. § 706(2)(A), (C).

48. The biological opinion is a final agency action, ripe for judicial review. *See Bennett*, 520 U.S. at 177-79.

49. This action is timely because it has been brought within six years of the biological opinion's issuance. *Cf.* 28 U.S.C. § 2401(a).

## Prayer for Relief

Wherefore, the City prays for judgment from this Court as follows:

1. A declaratory judgment that the Service's biological opinion, including its reasonable and prudent alternative, is not in accordance with law and is in excess of statutory authority;

2. A preliminary and permanent prohibitory injunction setting aside the Service's biological opinion, including its reasonable and prudent alternative, and prohibiting the Service from enforcing it or giving effect to it in any manner;

3. An award of the City's reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other authority, including the Court's inherent authority, as appropriate; and

4.    An award of any other such further relief as the Court may deem proper.

DATED: October 5, 2017.

Respectfully submitted,


s/ Joshua P. Thompson

JONATHAN WOOD                          JOSHUA P. THOMPSON
D.C. Bar No. 1045015                   D.D.C. No. TX0084
E-mail: jw@pacificlegal.org            E-mail: jpt@pacificlegal.org
Pacific Legal Foundation               DAMIEN M. SCHIFF*
3033 Wilson Blvd., Suite 700           Cal. Bar No. 235101
Arlington, Virginia 22201              E-mail: dms@pacificlegal.org
Telephone: (202) 888-6881              Pacific Legal Foundation
                                       930 G Street
                                       Sacramento, California 95814
                                       Telephone: (916) 419-7111
                                       Facsimile: (916) 419-7747

                                       *Pro Hac Vice Pending


Attorneys for Plaintiff

Complaint for Decl. & Inj. Relief